CITY OF HOUSTON, Appellant,

v.

Stephen N. RINER and Kevine Louise West Riner, Appellees.

No. 01–94–00053–CV.

Court of Appeals of Texas, Houston App. (1 Dist.).

March 9, 1995.

Rehearing Overruled April 20, 1995.

Peter W. Low, Austin, for appellant.

Stephen N. Riner, Houston, for appellee.

Before MIRABAL, COHEN and O'CONNOR, JJ.

## OPINION

This case involves deemed admissions. It arises from a property tax dispute between the City of Houston (the City) and

Stephen and Louise Riner (the Riners). We reverse and remand.

In 1992, the Houston Independent School District sued the Riners for delinquent taxes. Various state and local taxing units intervened in the suit, including the City of Houston. On August 12 and 16, 1993, however, the other taxing units elected to dismiss their claims, leaving the City of Houston as the only remaining plaintiff.[1]

On August 16, 1993, the Riners filed written discovery requests with the District Clerk and sent a copy to the City's attorneys via certified mail, return receipt. Included in the discovery requests was a single request for admission which stated: "No money is owed the City with respect to the Account." The City's attorneys did not file a response to the request for admission, and on September 28, 1993, when the parties appeared for trial before the tax master, the Riners made an oral motion that the court deem the answer admitted. In response, the City's attorney told the tax master he had never seen the request for admission, and he asked for time to research what had happened. The tax master reset the trial for October 26, 1993.

At the October 26 proceeding, the tax master noted on the record that the Riners were seeking a judgment based on the City's failure to answer the request for admission, and that the purpose of the hearing, according to the notation on his docket, was to determine why the City should be permitted to amend a deemed admission. After the hearing, the tax master deemed admitted the information covered by the request for admission.

On November 5, 1993, the City filed a motion to withdraw the deemed admission and motion to file a late response to the request for admission. The tax master denied the motions and on November 10, 1993, signed the report to the district court recommending that a take nothing judgment be entered in the Riners' favor.

Pursuant to the TEX. TAX CODE ANN. § 33.74 (Vernon 1992), the City appealed to

---

1. On July 1, 1993, the joint venture of Calame Linebarger Graham Pena Burney Foreman Torres & Garza, L.L.P. began to enforce the collection of delinquent taxes for the City of Houston and were substituted in the case for the City. For clarity, however, the appellant will be referred to as "the City" or "the City's attorneys."

the district court for a de novo review of the tax master's determination. On December 20, 1993, the trial court conducted a hearing de novo, taking testimony of witnesses on the issue of whether there was good cause for allowing the withdrawal of the deemed admission. The security guard for the building where the City's attorneys officed beginning June 1993, testified that from June 1993 through September 1993, she accepted mail for the City's attorneys at the security guard desk and delivered it to the City's attorneys' offices. She testified that she accepted and delivered the mail on her own without being asked or directed to by the City's attorneys. She also accepted mail for other building tenants. She would sign the green return receipt cards for certified mail, but had no independent recollection of specifically signing the green card in question for the Riners' discovery requests.

Wayne Slaughter, one of the City's attorneys, also testified at the hearing before the district court. He testified that the trial was continued from September 28 to October 26 so that he could research whether the request for admission had been received by the City. His investigation revealed that an unauthorized person (the security guard) was signing green cards and that the request for admission was not in the City's file. The first notice the City's attorneys had about the request for admission was received at the September 28, 1993 hearing before the tax master.

At the conclusion of the December 20 hearing, the district court denied the City's requested relief and signed an "Order Confirming the Tax Master's Recommendation."

In its second point of error, the City asserts that the district court abused its discretion in refusing to allow the City to withdraw its deemed admission based on the City's showing of "good cause."

■ A trial court possesses broad discretion to permit or deny the withdrawal of deemed admissions, and its ruling will be set aside on appeal only upon a clear abuse of discretion. *Esparza v. Diaz*, 802 S.W.2d 772, 776 (Tex.App.—Houston [14th Dist.] 1990, no writ). An abuse of discretion occurs when a court acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably. *Employers Ins. of Wausau v. Halton*, 792 S.W.2d 462, 464 (Tex.App.—Dallas 1990, writ denied).

Rule 169 of the Texas Rules of Civil Procedure states that a "matter is admitted, without necessity of a court order unless, within thirty days after service of the request, ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection." TEX. R.CIV.P. 169(1) A court may permit the withdrawal of a deemed admission "upon a showing of good cause for such withdrawal ... if the court finds that the parties relying upon the responses will not be unduly prejudiced and that the presentation of the merits of the action will be subserved thereby." TEX.R.CIV.P. 169(2).

■ With the 1988 amendment to Rule 169, Texas adopted "good cause" as the threshold standard for withdrawal of deemed admissions. *Boone v. Texas Employers' Ins. Ass'n*, 790 S.W.2d 683, 688 (Tex.App.—Tyler 1990, no writ); *Halton*, 792 S.W.2d at 465. Good cause is established by showing that the failure to file was not intentional or in conscious disregard of the obligation to timely file an answer, and under this standard, even a slight excuse for the original failure to answer is sufficient. *Ramsey v. Criswell*, 850 S.W.2d 258, 259 (Tex.App.—Texarkana 1993, no writ); *see also Boone*, 790 S.W.2d at 689; *Halton*, 792 S.W.2d at 465–66.

The court must look to the *knowledge and the acts* of the defaulting party to determine the existence of intentional disregard or conscious indifference. *Halton*, 792 S.W.2d at 466. In the present case, the uncontroverted evidence showed that the City's attorneys had been representing the City on delinquent tax cases since July 1, 1993; they handled a large docket of tax cases. The City's attorneys had moved to new offices in June 1993. The request for admission was served on the building's security guard at the guard's desk in August 1993. The guard had no independent recollection of receiving the involved documents. The guard accepted and delivered mail for tenants on different floors of the building. The mailed request for admis-

sion never made it into the City's attorneys' file on this case. The City's attorneys were not aware of the request for admission until the September 28, 1993 hearing.

Based on this uncontroverted evidence, we conclude the City established that its failure to answer the request for admission was the result of an accident or mistake; it was not intentional or the result of conscious indifference. Further, the Riners made no specific suggestion as to how they might be prejudiced by the withdrawal of the deemed admission. The mere fact that a trial on the merits is necessary does not constitute undue prejudice in a case such as this, where the Riners know the City claims they owe delinquent taxes in some amount. *See Halton,* 792 S.W.2d at 467 (refusing to find prejudice where plaintiff knew defendant disputed almost every issue in the lawsuit). Accordingly, the trial court abused its discretion when it refused to permit the withdrawal of the deemed admission.

We sustain the City's second point of error.

In light of our sustaining the second point of error, it is unnecessary for us to rule in the remaining points of error, and we decline to do so.

We reverse the judgment and remand this case to the trial court.